1  KAREN P. HEWITT
   United States Attorney
2  REBECCA S. KANTER
   Assistant U.S. Attorney
3  California State Bar No. 230257
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-6747
   Fax: (619) 235-4716
6  E-mail: rebecca.kanter@usdoj.gov

7

   Attorneys for Plaintiff
8  United States of America

9
                    UNITED STATES DISTRICT COURT
10
                    SOUTHERN DISTRICT OF CALIFORNIA
11

12 | UNITED STATES OF AMERICA,         ) Criminal Case No. 08cr2350-L
                                      )
13 |         Plaintiff,                ) **RESPONSE AND OPPOSITION TO**
                                      ) **DEFENDANT'S MOTIONS:**
14 |      v.                           )
                                      ) **(1) SUPPRESS STATEMENTS**
15 | AUDENAGO ACOSTA MONTES,          ) **(2) TO COMPEL DISCOVERY**
                                      ) **(3) GRANT LEAVE TO FILE FURTHER**
16 |                                   ) **MOTIONS**
                                      )
17 |         Defendant.                ) Date:    August 18, 2008
                                      ) Time:    2:00 p.m.
18 |                                   ) Courtroom: 14
                                      ) The Honorable M. James Lorenz
19

20       COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

21 United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby

22 files its Response and Opposition to Defendant's Motion to Suppress Statements, Motion to Compel

23 Discovery, and Leave to File Further Motions. This Response and Opposition is based upon the files

24 and records of this case, together with the attached Statement of Facts, Memorandum of Points and

25 Authorities, as well as the Government's Motion for Reciprocal Discovery.

26 //

27 //

28 //

**I**

**STATEMENT OF FACTS**

**A.    Primary Inspection**

On May 7, 2008, at approximately 4:25 a.m., Audenago Acosta Montes ("Defendant") drove a white 1995 Ford F-150 bearing California license plate number 5F23888 ("the vehicle") to lane 24 of the San Ysidro Port of Entry. Canine Enforcement Officer ("CEO") Staci Smithson was conducing roving operations with a narcotics detector dog, Echo, who alerted to the passenger door of the vehicle.

CEO Smithson advised Customs and Border Protection ("CBP") Officer Xiomara Rodriguez, who was assigned to primary lane 24, of the alert. Officer Rodriguez asked Defendant for his identification. Defendant presented his Permanent Resident Card and his California identification card. Defendant said he was going to his home in Chula Vista. He twice said he was not bringing anything back from Mexico. He said the purpose of his trip to Mexico was to see his wife. Defendant was escorted to secondary inspection.

**B.    Secondary Inspection**

In secondary inspection, CBP Officer Ezra DeJesus inspected the vehicle. He found a package containing a substance which tested positive for methamphetamine. Defendant was advised by Immigration Customs Enforcement Agent Darren Henderson that he was under arrest. CBP Officer David Reynosa read Defendant his Miranda rights in Spanish. Defendant invoked his right to speak to an attorney.

On May 8, 2008, at approximately 6:15 a.m., CEO Smithson was sweeping the seized vehicle lot with Echo, when Echo alerted to a narcotic odor emanating from the vehicle. CBP Officer Nunez examined the vehicle further and found three additional packages in the passenger side door panel. The total weight of the packages was 1.8 kilograms.

Later that same day, CEO Bianchi was taking a break with her narcotics detector dog Ringo when Ringo alerted to the vehicle. CEO Bianchi conducted an inspection of the vehicle and discovered a package wrapped in black tape wedged up high in the passenger side dashboard. The package weighed .75 kilograms. The total weight of all five packages of methamphetamine was 3.3 kilograms.

//

## II

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Defendant moves to suppress his statements. The only statements made by Defendant were the statements made to the CBP officer in the primary inspection area. Because Defendant was not in custody when he was at the primary inspection booth, his statements were not the result of a custodial interrogation and did not need to be preceded by Miranda warnings.

Defendant has moved to suppress statements at the time of arrest because "his Miranda waiver was not knowing, intelligent, and voluntary." (Def. Mem. P.&A. at 2.) Defendant, however, did not make a statement post-arrest. Therefore, there is nothing to suppress.

### A.   Standards Governing Admissibility of Statements

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. *See* Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. *See* id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); *cf.* Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted).

### B.   Standards Governing Grant or Denial of Evidentiary Hearing

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. *See* United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to

suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

Any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit. Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court in the discretion of the court. Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

In this case, Defendant has failed to submit an affidavit supporting his motion to suppress. He fails to articulate what statements he seeks to have suppressed or the basis for the motion. Specifically, in challenging the voluntariness of "any other statements," (Def. Mem. P.&A. at 2) Defendant fails to articulate how statements made at the primary inspection booth at the San Ysidro Port of Entry in response to routine immigration and customs questions could possibly be involuntary. As such, his request for an evidentiary hearing should be denied.

**C.      Adequate Proof to Support Rejection of a Motion to Suppress**

The Ninth Circuit has expressly stated that a proffer by the United States based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts. *See* Batiste, 868 F.2d at 1092. Moreover, the Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857

1  (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact exist). Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for suppression consist solely of conclusory allegations of illegality. See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's declaration and points and authorities submitted in support of motion to suppress indicated no contested issues of fact).

### D.  Defendant's Statements Should Not Be Suppressed

In this case, although Defendant was not read Miranda rights prior to being asked at the primary inspection booth about where he was going and the purpose of his visit to Mexico, it was not required because they was not in custody.

Custody involves the deprivation of "freedom of action in any significant way." Miranda, 384 U.S. at 444. The Defendant bears the burden of proving that he was in custody. United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984). A routine traffic stop, even if it significantly curtails a driver's freedom of action, is not "custody" because its brief and public nature limits the coerciveness of the stop. Berkemer v. McCarty, 468 U.S. 420, 437-39 (1984); see also United States v. Galindo-Gallegos, 244 F.3d 728, 732 (9th Cir.) (holding that an individual is not in custody during a border stop where questioning occurred in public with numerous witnesses), amended by 255 F.3d 1154 (9th Cir. 2001). Because Defendant has failed to articulate any factual disputes that would indicate that he was in custody, his statements at the primary inspection booth did not need to be preceded by Miranda warnings and should not be suppressed.

### III

### DEFENDANT'S MOTIONS TO COMPEL DISCOVERY

The United States produced 104 pages of discovery on May 23, 2008, including the reports from the Customs and Border Protection Officers, an inventory of Defendant's property, copies of the documents found in his possession and in the vehicle, and photographs of the vehicle and the narcotics. On July 10, 2008, the United States produced an additional 8 pages of discovery

consisting of the report by the Immigration and Customs Enforcement Agent.

**(1)     Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

**(2)     Arrest Reports, Notes, and Dispatch Tapes**

The Government will provide Defendant with all known reports related to Defendant's arrest in this case. The Government is not aware at this time of the existence of any dispatch tapes relevant to this case. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A). The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

The United States objects to Defendant's request for TECS records. Reports from the Treasury Enforcement Communication System ("TECS") are not material to the preparation of the defense, and are therefore not subject to Rule 16(c) unless intended for use by the Government as evidence during its case-in-chief. If the United States intends to introduce TECS information at trial in its case-in-chief,

1 discovery of the relevant TECS reports will be made at least by the time of the filing of its trial
2 memorandum.

3     Evidence that the Government intends to use for impeachment or rebuttal is not considered
4 evidence for use in the Government's case-in-chief. *See* United States v. Givens, 767 F.2d 574, 582-583
5 (9th Cir. 1985); United States v. Delia, 944 F.2d 1010, 1017-18 (2d Cir. 1991) (holding that Government
6 is not required under any prong of Rule 16 to disclose rebuttal evidence which it intends to use against
7 a proposed line of defense); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that
8 trial court order requiring Government to disclose "any and all impeachment evidence . . . which tends
9 to negate guilt" including rebuttal evidence exceeded scope of court's authority under Rule 16). The
10 Government at this time does not intend to use TECS evidence as part of its case-in-chief, but reserves
11 the right to impeach Defendant under Rule 607 with TECS evidence should it become relevant during
12 Defendant's case.

13     Rule 16 also permits discovery of information that is "relevant to the development of a possible
14 defense." United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16,
15 a defendant must make a prima facie showing of materiality. United States v. Mandel, 914 F.2d 1215,
16 1219 (9th Cir. 1990). A defendant must make a specific request for an item and articulate how it is
17 helpful to the defense. *See* United States v. Olano, 62 F.3d 1180, 1203 (9th Cir. 1995). "Neither a
18 general description of the information sought nor conclusory allegations of materiality suffice; a
19 defendant must present facts which would tend to show that the Government is in possession of
20 information helpful to the defense." Mandel, 914 F.2d at 1219. Here, although Defendant has made
21 a specific request for the TECS reports, he has not made any showing of materiality.

22 **(3)    Brady Material**

23     The Government will perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose
24 material exculpatory information or evidence favorable to Defendant when such evidence is material
25 to guilt or punishment. The Government recognizes that its obligation under Brady covers not only
26 exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf
27 of the United States. *See* Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley,
28 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the

7

1 defense. <u>Bagley</u>, 473 U.S. at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

<u>Brady</u> does not, however, mandate that the Government open all of its files for discovery. <u>See United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000) (<u>per curiam</u>). Under <u>Brady</u>, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see</u> <u>United States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (<u>see United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (<u>see United States v. Mikaelian</u>, 168 F.3d 380-389-90 (9th Cir. 1999) <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. <u>See United States v. Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001). <u>Brady</u> does not require the Government "to create exculpatory evidence that does not exist," <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware." <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976).

**(4)    Information That May Result in a Lower Sentence Under the Guidelines**

The Government will provide Defendant with all <u>Brady</u> material that may result in mitigation of Defendant's sentence. Nevertheless, the Government is not required to provide information bearing on Defendant's sentence until after Defendant's conviction or guilty plea and prior to her sentencing date. <u>See United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) (no <u>Brady</u> violation occurs "if the evidence is disclosed to the defendant at a time when the disclosure remains in value").

**(5)    Defendant's Prior Record**

As far as the Government is aware at this time, Defendant does not have a prior record. The Government will provide Defendant with documentation indicating this lack of a prior criminal record

8

and thereby fulfill its duty of discovery under Rule 16(a)(1)(D).[1/] See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

**(6)    Any Proposed 404(b) Evidence**

The Government will disclose in advance of trial the general nature of any "other bad acts" or "other acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(7)    Evidence Seized**

The Government has produced copies of documents seized at the time of Defendant's arrest. The Government will continue to comply with Rule 16(a)(1)(E)[2/] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(8)    Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[3/] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and tangible objects that are within its possession, custody, or control, and that is either material to the

---

[1/]    Defendant requests evidence of his prior record pursuant to Rule 16(a)(1)(B). The Government interprets this as a request pursuant to Rule 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior record.

[2/]    Defendant requests this discovery pursuant to Rule 16(a)(1)(C). Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E).

[3/]    Defendant makes this request under Fed. R. Crim. P. 16(a)(2)(C). Because there is no such subsection in Rule 16, the Government interprets this as a request under Rule 16(a)(1)(E) which applies to the discovery of documents and objects.

9

preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(9)  Evidence of Bias or Motive to Lie**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(10)  Impeachment Evidence**

As discussed elsewhere, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(11)  Evidence of Criminal Investigation of Any Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(12)  Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(13)  Witness Addresses**

The Government has provided Defendant with the reports containing the names, work addresses, and telephone numbers of the inspectors, officers and special agents who asked questions of Defendant and found the marijuana in the vehicle. In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The Government objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant. In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial. United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(14)    Name of Witnesses Favorable to the Defendant**

The Government is not aware of the names of any witnesses favorable to the Defendant's case. If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(15)    Statements Relevant to the Defense**

The Government will provide all statements relevant to Defendant as required by Rule 16, Brady, and Jencks. The Government is not all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(17)    Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the

11

1 Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). There is no applicable Jencks material at this time. If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act relevant to the testifying witness(es).

**(17) & (18)   Giglio Information & Agreements Between the Government and Witnesses**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). The Government is not aware of any Giglio information related to this case. If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(19)   Informants and Cooperating Witnesses**

At this time, the United States is unaware of any informants or cooperating witnesses related to this case. If the United States determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

**(20)   Bias by Informants or Cooperating Witnesses**

As indicated elsewhere, the United States is unaware of any informants or cooperating witnesses. If any such witnesses is identified, as explained elsewhere, the United States will comply with Giglio.

**(21)   Government Examination of Law Enforcement Personnel Files**

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

The United States objects to Defendant's request that the Government attorney personally review the law enforcement personnel files. Defendant's claim that the Assistant U.S. Attorney has "this obligation to examine files" (Def. Mem. P. & A. at 8) is foreclosed by the Ninth Circuit's ruling in Jennings, in which the Court explicitly rejected such a broad reading of Henthorn and held that the Government attorney does not have the obligation to personally review the files. 960 F.2d at 1492.

**(22)    Expert Summaries**

The Government will provide notice prior to trial of any expert witnesses that will be called to testify at trial.

**IV**

**DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**V**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A.    All Evidence That Defendant Intends To Introduce In Her Case-In-Chief**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which

are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in her case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

### B.    Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

## VI

## CONCLUSION

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED:     August 14, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


/s/*Rebecca Kanter*
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff

| | |
|---|---|
| 1 | United States of America |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr2350-L |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| AUDENAGO ACOSTA MONTES, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michelle Betancourt

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2008.

/s/ *Rebecca Kanter*
REBECCA S. KANTER